# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF RHODE ISLAND

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| In re: MICROFIBRES, INC. | : | |
| | | Bk. No. 16-10154 |
| CEDRIC WILLIAMS, | : | Chapter 7 |
| on behalf of himself and all others similarly situated, | : | |
| Plaintiff, | : | A.P. No.16-01002 |
| v. | : | |
| MICROFIBRES, INC., | | |
| | : | |
| Debtor. | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**JOINT MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION OF CHAPTER 7 TRUSTEE AND CLASS REPRESENTATIVE, PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 9019 AND 7023 TO: (I) APPROVE THE SETTLEMENT AGREEMENT PURSUANT TO BANKRUPTCY RULE 9019, (II) PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT PURSUANT TO BANKRUPTCY RULE 7023, (III) APPROVE THE FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE SETTLEMENT, (IV) SCHEDULE A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT AGREEMENT, (V) FINALLY APPROVE THE SETTLEMENT AGREEMENT FOLLOWING THE FAIRNESS HEARING, AND (VI) GRANT <u>RELATED RELIEF</u>**

## <u>NOTICE</u>

Within twenty-one (21) days after service, if served electronically, as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if served by mail or other excepted means specified, any party against whom such paper has been served, or any other party who objects to the relief sought, shall serve and file an objection or other appropriate response to said paper with the Bankruptcy Court Clerk's Office, 380 Westminster Street, 6th Floor, Providence, RI 02903, (401) 626-3100. If no objection or other response is timely filed, the paper will be deemed unopposed and will be granted unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interest of justice requires otherwise.

Plaintiff Cedric Williams ("<u>Plaintiff</u>" or "<u>Class Representative</u>"), together with Joseph M. DiOrio, the Chapter 7 trustee (the "<u>Trustee</u>") of Microfibres, Inc. ("<u>Microfibres</u>" or the "<u>Debtor</u>")

by and through their respective counsel, hereby jointly submit this Memorandum of Law in support of their Motion, pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 23 of the Federal Rules of Civil Procedure (the "Civil Rules"), applicable hereto by Bankruptcy Rule 7023, for the entry of an Order: (1) approving the *Settlement and Release Agreement* (the "Settlement Agreement")[1] pursuant to Bankruptcy Rule 9019; (2) preliminarily approving the Settlement Agreement pursuant to Bankruptcy Rule 7023; (3) approving the form and manner of notice of the Settlement to the members of the Class (the "Class Notice"); (4) scheduling a fairness hearing to consider final approval of the Settlement Agreement (the "Fairness Hearing"); (5) finally approving the Settlement Agreement following the fairness hearing (the "Final Settlement Order"); and (6) granting related relief (the "Joint Motion"). In support of the Joint Motion, the Parties respectfully state:

**INTRODUCTION**

1. The United States Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court") should approve the Settlement Agreement. The Plaintiff has sued the Debtor in the above-captioned adversary proceeding (the "WARN Action") for allegedly failing to provide notice required by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101, *et seq.*, (the "WARN Act"), before ordering plant closings or about January 28, 2016 at facilities located at 1 Moshassuck Street, Pawtucket, RI 02860 (the "RI Facility") and at 3821 Kimwell Drive, Winston-Salem NC 27114 (the "NC Facility") (collectively the "Facilities"). In exchange for a release of any claims for damages under the WARN Act or any other federal, state, or local laws or regulations of similar effect, the Trustee has agreed, subject to approval of

---

[1] A copy of the Settlement Agreement (not including Schedule 1) is attached hereto as Attachment A. The Parties seek to have Schedule 1 to the Settlement sealed due to the Class Members' private information contained therein. Unless otherwise defined herein, capitalized terms have the meanings provided in the Settlement Agreement.

this Court, to a Settlement Payment of one million dollars ($1,000,000.00) in full and final settlement of the WARN Action, which will be distributed by Class Counsel in accordance with the terms of the Settlement Agreement.

2. From the perspective of each of the Parties, the Settlement Agreement is fair and reasonable. Further litigation of the WARN Action would be protracted and expensive, and the outcome uncertain.

3. Class Counsel contends that the failure of the Debtor to provide any written WARN notice to Class members precludes Debtor's reliance on any of the WARN Act's affirmative defenses under the statute. Further, notwithstanding the lack of written notice, Class Counsel contends that the Debtor does not qualify for any of the potential affirmative defenses to WARN liability in the statute.

4. Nonetheless, further litigation, including a potential trial on the merits would require both sides to engage in extensive expert and non-expert discovery at significant expense, with inherently uncertain results.

5. In light of these factors, the Parties have determined that the terms of the settlement, set forth in the Settlement Agreement, are well within the range of reasonableness. Accordingly, the Parties respectfully submit that the Bankruptcy Court should approve the settlement under Bankruptcy Rule 9019.

6. For essentially the same reasons, the Settlement Agreement is also fair and reasonable to the Class Members. In addition, the Settlement Agreement provides for a speedier payment to the Class Members. Without the settlement, the Class Members could wait many more years for any payment on their alleged WARN claims, even if they prevail at trial and on appeal.

7.  Finally, the Parties request a two-step approval process to facilitate notice to Class Members.  After preliminary approval of the Settlement Agreement and the form of the Class Notice, Class Counsel will provide the Class Notice to each Class Member, which describes the Settlement Agreement, and informs the Class Members of their right to object to the Settlement Agreement, and of the deadlines for objecting.

8.  After service of the Class Notice, the Parties request that the Bankruptcy Court hold a Fairness Hearing within sixty days of entry of the preliminary approval order, at which the Parties will request final approval of the Settlement Agreement.

9.  Based on the foregoing, and as set forth more fully below, the Parties submit that the Bankruptcy Court should approve the Settlement Agreement and the procedures proposed in this Joint Motion.

## JURISDICTION

10.  The Bankruptcy Court has jurisdiction over the Motion under 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are section 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023.

## BACKGROUND

11.  On January 29, 2016 (the "<u>Petition Date</u>"), the Debtor filed with the Bankruptcy Court a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, commencing its bankruptcy case ("<u>Bankruptcy Case</u>").  Prior to the Petition Date, the Debtor operated the Facilities and employed more than 100 employees, including the Class Members, in its business operations.

4

12. The Plaintiff alleges that plant closings were implemented at the Facilities on or about January 28, 2016 and violated the WARN Act because the class members who worked at or reported to the Facilities were not provided sixty days advance written notice of their terminations as required by the WARN Act.

13. On February 2, 2016, and as amended on February 9, 2016, Plaintiff initiated the above-referenced action (the "WARN Action") by filing a *Class Action Adversary Proceeding Complaint* ("Complaint") against the Debtor. Therein, the Plaintiff alleges that the Debtor is an "employer" as defined by the WARN Act; and that the Debtor effected a plant closing, as defined in the WARN Act, at its Facilities. The Complaint further alleges that the Plaintiff and the other similarly situated former employees terminated on or about January 28, 2016, worked at or reported to the Facilities, and that these former employees did not receive from the Debtor 60 days' advance written notice of their termination, as required by the WARN Act. In the Complaint, the Plaintiff seeks an allowed administrative priority claim pursuant to 11 U.S.C. § 503(b)(1)(A)(ii) against the Debtor in favor of himself and the Class members equal to the sum of: (a) unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for a period of 60 days, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. §2104(a)(1)(A) and which are attributable to the post-petition portion of the Plaintiff's and Class's WARN Act claims, or alternatively, an allowed priority claim, pursuant to 11 U.S.C. §

5

507(a)(4) and (5), for the first $12,745 of the Plaintiff and the class WARN Act claims with any remainder as general unsecured claims.

14.     On May 6, 2016, the Trustee filed an answer to the Complaint, in which the Trustee admitted that "on or about January 28, 2016, the Debtor terminated the Plaintiffs' employment as part of a plant closing. . ." and that "the Debtor ceased all operations and terminated its employees on January 28, 2016." The Trustee also admitted that, at all relevant times, the Debtor was an "employer," as that term is defined in the WARN Act. The Trustee asserted, among other defenses, the "faltering company" and "unforeseeable business circumstances" exceptions to the WARN Act.

15.     A Scheduling Order was entered on May 16, 2016.

16.     On May 25, 2016, the Plaintiff filed a Motion for Class Certification. The Motion for Class Certification was ultimately granted on August 25, 2016. The Class Notice, as approved by the Court was mailed on September 14, 2016. The opt-out deadline was November 13, 2016. Only one person chose to exclude himself from the Class.

17.     On May 25, 2016, the Plaintiff served the Trustee with Interrogatories, Requests for Production and Requests for Admissions. The Trustee responded to the Plaintiff's written discovery on July 25, 2016.

18.     The Parties agreed to mediate this matter and jointly filed a motion for entry into mediation on October 21, 2016, and requested the mediation to be held within sixty days and that the parties' compliance with the established discovery deadlines be suspended during the pendency of the mediation, and that such deadlines be modified in the event the mediation is unsuccessful.

6

19. On October 24, 2016, the Court granted the Parties' request and referred the matter for mediation. The mediation was held on December 6, 2016.

20. The Parties agree that the WARN Action presents significant and complex legal and factual issues regarding the application of the WARN Act. The Trustee denies liability and asserts numerous defenses to the WARN Action, including but not limited to that the Debtor's conduct falls within one or more of the specific exceptions to the WARN Act. In an attempt to avoid extensive and costly litigation, and the risks attendant thereto, the Plaintiff and the Trustee reached a settlement at the mediation, which, to the best of the Parties' information and belief, encompasses 176 Class Members, as described herein, and the Settlement is memorialized in the Settlement Agreement, as described herein.

## ESSENTIAL TERMS OF THE PROPOSED SETTLEMENT

21. As noted above, the Parties have reached an agreement, subject to Bankruptcy Court approval, the terms of which have been set out in the Settlement Agreement.[2] In general, the Settlement provides that the Settlement Amount shall be equal to one million dollars ($1,000,000) ("<u>Settlement Amount</u>"), payable by the Trustee via wire transfer(s) to Class Counsel within five business days of the Effective Date, or as soon thereafter as the Trustee has the available funds to satisfy the Settlement Amount, in accordance with the following: a) five hundred thousand dollars ($500,000) to be paid from the first $500,000 in funds received into the Debtor's estate on or after December 6, 2016 and b) five hundred thousand dollars ($500,000) to be paid at the rate of fifty percent (50%) from the next one million dollars ($1,000,000) in funds received into the Debtor's estate (beyond the initial five hundred thousand dollars received into the Debtor's estate on or after December 6, 2016). Within five business days following final

---

[2] This Memorandum of Law contains a summary of certain provisions of the Settlement Agreement. In the event of any conflict, the Settlement Agreement itself shall govern over any description contained in this Memorandum of Law.

7

approval of the Settlement Agreement by the Bankruptcy Court and every thirty days thereafter, the Trustee will provide a) monthly written reports via electronic transmission to Class Counsel disclosing estate recoveries since December 6, 2016, along with b) wire transfers to The Gardner Firm, P.C. until the Settlement Amount of one million dollars is paid in full. The essential terms of the Settlement Agreement, in addition to those set forth above, are as follows:

i. Upon the Effective Date, any claims that have been or could have been filed by, or in any way asserted by the Class Members which are based upon the WARN Act or any other federal, state, or local laws or regulations of similar effect are released and disallowed in their entirety without need for any further order of the Bankruptcy Court.

ii. Class counsel shall retain a third party settlement administrator (the "Settlement Administrator") to distribute the Settlement Amount as set forth herein and further manage all applicable tax withholdings and reporting. The Settlement Administrator shall be responsible for issuing payment to Class Counsel and Class Members and handling all other aspects of the administration of the Settlement, including, but not limited to: a) the formation of a qualified settlement fund (the "Qualified Settlement Fund") as authorized by Treasury Regulation 1.486B-1(c) to accept, distribute, and otherwise administer the Settlement; b) the determination, subject to Class Counsel's and the Trustee's review and approval, of the payroll tax and withholding amounts for each of the individual payments to each Class Member; c) the preparation and mailing of settlement checks to each Class Member; d) the withholding, transmittal, and reporting, as appropriate, of all payroll taxes, and preparing and mailing of all W-2 Forms (for wage claim payments) and 1099 Forms (for non-wage claim payments-as necessary), and e) the processing of returned notices or settlement checks as undeliverable, including re-mailing to forwarding addresses and tracing of current addresses. The Parties have agreed to split the fees and costs of the Settlement Administrator, which is not expected to exceed $10,000, such that half of that expense shall be paid from the Settlement Amount as part of Class Counsel's Expenses (defined below) and the other half to be paid by the Trustee, in addition to the Settlement Amount. The Trustee shall include and pay the estate's half of the fees and costs of the Settlement Administrator in addition to, and at the same time as, his initial payment on the Settlement Amount. Once payments on the Settlement Amount have been received by the Settlement Administrator, such amounts shall be distributed by the Settlement Administrator in one or more distributions, at the request of Class Counsel, as follows: (a) a one-time payment of $7,500 to Plaintiff Cedric Williams and a one-time payment of $2,500 to contributing non-plaintiff Dawn Phillips for their services rendered in this action (the "Service Payments") and (b) the balance, minus one third attorney fees, plus expenses of litigation, shall be the gross amounts (the"Pre-tax Amounts") divided among the Class Members, as shown on Schedule 1 to the Settlement

8

Agreement.[3] The Pre-tax Amounts have been calculated by Class Counsel and were derived from Debtor's books and records. Within five (5) business days of the entry of the Bankruptcy Court's final order approving the Settlement, Class Counsel shall provide the Settlement Administrator with a list of the names, addresses, and distribution amount for all payments due under this Settlement Agreement, including the Pre-tax Amount due to each Class Member. The Settlement Administrator shall then determine the amount due to each Class Member, less all applicable taxes and withholdings. Payments from the Settlement Fund to Class Members shall be made net of all applicable employment taxes to be withheld from such payments as determined to be due by the Settlement Administrator, including, without limitation, FICA/Medicare tax and federal, state and local income tax withholding. Any and all applicable amounts withheld from the Class Members, including, without limitation, the employee and employer portion of FICA/Medicare tax and federal, state and local income tax withholding, and any and all applicable employer tax contributions, including, without limitation, any federal and state unemployment tax due, shall be reported to the Internal Revenue Service ("IRS") or other applicable taxing authorities when payment becomes due and owing and reported under the payee's name and social security number on a W-2 Form and any applicable state or local tax form. All applicable employer tax contributions, including, without limitation, the Debtor's share of FICA/Medicare tax and any federal and state unemployment tax due, shall be paid out of the Settlement Fund. The Settlement Administrator shall be responsible for transmitting said amounts to the appropriate taxing authorities. Verification of payment of such taxes to the appropriate taxing authorities shall be provided by the Settlement Administrator to Class Counsel and counsel for the Trustee. Payments of Class Counsel's Fees and Class Counsel's Expenses shall be made to Class Counsel by the Settlement Administrator without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which such payee shall provide for this purpose, on a 1099 Form. The Service Payments shall be made by the Settlement Administrator without withholding and reported to the IRS and the payee under the payee's name and social security number on a 1099 Form. The payment of administration fees and costs to the Settlement Administrator shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on a 1099 Form. The Settlement Administrator shall prepare, file and provide copies (within fifteen (15) days of filing) of all of the foregoing to Class Counsel and the Trustee's counsel, together with proof of transmittal of all necessary taxes, and shall prepare and file all returns, reports, information references, other reporting and other documents with, and remit all necessary taxes to, the taxing authorities in connection with the payments to be made under this Settlement so as to ensure compliance with all federal and state tax laws and related reporting requirements. For the avoidance of doubt, the Trustee and Debtor shall not be responsible for any payroll taxes or any federal, state or local income tax imposed on employees (which taxes shall be properly withheld and remitted to the applicable taxing authorities as required herein); any employer tax payments, including, without limitation, the Debtors' share of

---

[3] The parties have determined that James McCulloch and Alice S. Kraseiko were mistakenly included in the Class and have thus excluded them from Schedule 1. The Parties have agreed to send a Notice of Exclusion to Mr. McCulloch and to the last known address of Ms. Kraseiko (who was deceased before the shutdown), the form of which is attached to the Settlement Agreement as Exhibit D.

FICA/Medicare tax and any federal and state unemployment tax; any taxes imposed with respect to the payment of attorneys' fees to Class Counsel under this Settlement Agreement; any taxes imposed with respect to the payment of the Service Payments; any taxes imposed with respect to the payment of administration fees to the Settlement Administrator; or any and all taxes imposed on the income and earnings of the Qualified Settlement Fund. Class Counsel shall be responsible for the production and mailing of all notices required to be provided to the Class Members (the "Class Notice"), the cost of which shall be paid from the Settlement Amount. The address of Class Counsel will be used as the return address for the Class Notices and Class Counsel will respond to all inquiries of the Class arising from or related to this Settlement.

iii. Class Counsel is entitled to attorneys' fees ("Class Counsel's Fees") in the amount of one-third (1/3) of the Settlement Payment, net of the one-time Service Payments. In addition, Class Counsel is entitled to litigation expenses (including costs associated with the production and mailing of the Class Notice) ("Class Counsel's Expenses"). Class Counsel's Fees and Class Counsel's Expenses, as well as the Service Payments, shall be paid exclusively from the Settlement Amount. Class Counsel's Fees and Class Counsel's Expenses shall be payment in full for Class Counsel's work and expenses in connection with this matter.

iv. Issuance of Class Notice: Class Counsel shall send the Class Notice by first class mail to each Class Member's last known address, and the Class Notice shall state:

    a. A summary of the essential terms of the Settlement;

    b. That the Settlement shall become effective only if the Settlement Agreement is finally approved by the Bankruptcy Court under Rules 7023 and Rule 9019 of the Federal Rules of Bankruptcy Procedure, and Rule 23 of the Federal Rules of Civil Procedure, as made applicable by Rule 7023 of the Federal Rules of Bankruptcy Procedure;

    c. That, upon the Effective Date and payment of the Settlement Amount, the Settlement shall be effective as to all Class Members;

    d. The deadline for objecting to the settlement and the date of the Final Fairness Hearing;

    e. The projected Pre-tax dollar amounts such Class Member would receive under this Settlement, as shown on Schedule 1; and

    f. That all Released Claims of a Class Member (other than the right to be paid under the terms of this Settlement) shall be waived and any individual claim of Class Members against the Debtor based upon the WARN Act or any comparable state and local laws requiring notice prior to a shutdown shall be deemed satisfied and that no person, including the Class Member, shall be entitled to any further distribution thereon.

    v.    The Settlement Agreement shall become effective only if it is approved by a final order entered by the Bankruptcy Court; and

    vi.    Except for the rights arising out of, provided for, or reserved in this Settlement Agreement, upon the Effective Date, the Plaintiff and the Class Members, for and on behalf of themselves, and their respective predecessors, successors, assigns, heirs, personal representatives and estates (collectively, the "<u>Releasing Parties</u>"), do hereby fully and forever release and discharge the Trustee, the estate of the Debtor, including but not limited to the Debtor's current and former holding companies, parents, subsidiaries, affiliates, entities, divisions, lenders, shareholders, owners, investors, officers, directors, members, partners and/or limited partners, principals, assigns, employees, agents, representatives, insurers, accountants, consultants, and attorneys, and the predecessors and successors of each of the foregoing, in any capacity whatsoever (collectively, the "<u>Released Parties</u>") from any and all claims of any kind, including but not limited to any and all civil, regulatory, and/or administrative claims, actions, suits, demands, rights, causes of action, liabilities, liens, judgments, damages, or proceedings (including for damages, attorneys' fees, penalties, costs, and expenses of every kind and however denominated) at law, in equity, and otherwise, whether known or unknown, anticipated, suspected, or disclosed, which the Releasing Parties have, may have, have asserted, or could assert in the future against the Released Parties of any type whatsoever which are based upon the WARN Act, or any other federal, state, or local laws or regulations of similar effect (the "<u>Released Claims</u>").  The Released Parties expressly reserve the right to object to, offset, or oppose any and all Released Claims, and to pursue claims against third parties other than the Class Members with respect to the Released Claims.  Upon the Effective Date, the Class Members agree that any Released Claims that have been filed by the Class Representative or the Class Members in the Bankruptcy Case are disallowed in their entirety and shall be deemed expunged from the claims register.  In addition, each Releasing Party shall be deemed as of the Effective Date and the payment of the Settlement Amount to have released the Plaintiff from any and all claims whether liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown that he or she may have against the Plaintiff, any successors or assignees to his legal interests, or any of his present or former agents, attorneys, or consultants arising out of any Released Claim or the terms of this Settlement.

    vii.    Upon the Effective Date, Class Counsel shall immediately file a dismissal with prejudice of the WARN Action (in a form agreeable to the Parties) with the Bankruptcy Court.

### **RELIEF REQUESTED**

22.    By this Joint Motion, the Parties request that the Bankruptcy Court enter orders: (1) approving the Settlement Agreement pursuant to Bankruptcy Rule 9019; (2) preliminarily approving the Settlement Agreement pursuant to Bankruptcy Rule 7023; (3) approving the form

and manner of the Class Notice; (4) scheduling the Fairness Hearing; (5) finally approving the Settlement Agreement following the Fairness Hearing; and (6) granting related relief.

## BASIS FOR RELIEF REQUESTED

**A.     The Bankruptcy Court Should Approve the Settlement Pursuant to Rule 9019 of the Bankruptcy Rules.**

23.     Courts have consistently found that compromises are favored in bankruptcy to minimize litigation and expedite the administration of a bankruptcy estate. See, e.g., *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also, *In re Culmtech, Ltd*., 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990) ("[C]ompromises are favored in bankruptcy and … much of litigation in bankruptcy estates results in settlements"). Bankruptcy Rule 9019 authorizes a bankruptcy court to approve a compromise or settlement after notice and a hearing, Fed. R. Bankr. P. 9019(a), and section 105 of the Bankruptcy Code empowers a court to issue any order that is "necessary or appropriate." 11 U.S.C. § 105(a).

24.     The authority to approve a compromise settlement is within the sound discretion of the bankruptcy court. *Jeremiah v. Richardson*, 148 F.3d 17, 18 (1st Cir. 1998)(citing *Jeffrey v. Desmond*, 70 F. 3d 183, 185 (1st Cir. 1995)).

25.     When exercising such discretion, the bankruptcy court should consider factors which include: "(i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise." *Id*. at 19, citing *Jeffrey*, 70 F. 3d at 185.

**B.     Application of the Approval Factors.**

26.     The results of a trial are uncertain and the litigation here is complex. The WARN Action involves numerous legal issues regarding the application of the WARN Act and its statutory and other legal defenses to complex facts. These issues include, *inter alia*, (i) whether the Debtor provided adequate notice to the Class Members under the WARN Act; (ii) whether the Debtor can be held liable under the WARN Act in connection with the alleged acts/omissions; (iii) whether the Debtor was entitled to give fewer than sixty days' notice because of statutory exceptions under the WARN Act; (iv) the computation of the amount of damages and whether such damages are entitled to administrative priority; (v) whether attorneys' fees are to be awarded to the Class Members if they prevail and whether such fees are entitled to administrative priority.

27.     While the Plaintiff feels confident that the Trustee's discovery responses in this matter support the alleged WARN violation, the Trustee maintains that the Debtor has defenses and intends to continue to litigate the matter. Continued litigation would be costly and time-consuming, diminishing assets in the estate, and will expose the Parties to significant litigation risks. Class Counsel has asserted that the aggregated WARN Act liability of sixty (60) days' damages and benefits is approximately $1.25M, not counting attorneys' fees and costs. The settlement, which was the product of a mediation held before Berry Mitchell, provides for a one million dollar Settlement Amount and eliminates any further accrual of litigation expenses, on all sides, associated with the WARN Action. Accordingly, the Parties respectfully submit that approval of the Settlement Agreement is warranted.[4]

28.     In the exercise of his reasonable business judgment, the Trustee submits that the Settlement Agreement is in the best interest of creditors and the Estate. The paramount interest

---

[4] In the event that the Settlement Agreement is not approved by the Bankruptcy Court or the Settlement Agreement does not become binding and enforceable for any reason, the Parties reserve all of their rights.

of creditors and reasonable deference to their views also favors approval of the Settlement Agreement. Moreover, as set forth above, the Settlement Agreement spares the Estate the significant expense and uncertainty associated with the litigation of the myriad of issues in the WARN Action.

29. Accordingly, in light of each of the above factors, the Settlement Agreement should be approved.

**C. The Bankruptcy Court Should Preliminarily Approve the Settlement.**

30. Approval of a class settlement generally requires two hearings: one preliminary approval hearing and one final "fairness" hearing. *Gates v. Rohm & Haas Co,* 248 F.R.D. 434, 438 (E.D. Pa. 2008). "The preliminary approval decision is not a commitment [to] approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" *Gates v. Rohm & Haas Co,* 248 F.R.D. 434, 438 (E.D. Pa. 2008) quoting *Smith v. Professional Billing & Mgmt. Sys., Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007); *see also*, *In re Community Bank of Northern Virginia*, 2008 WL 3833271 (W.D. Pa. Aug. 15, 2008). The preliminary approval determination requires the Bankruptcy Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re General Motors Corp.*, 55 F.3d 768, 785-86 (3d Cir. 1995).

31. The Settlement Agreement here has no obvious deficiencies and falls well within the range of reason. Each of the above-cited factors favors preliminary approval of the Settlement Agreement.

32. First, the settlement is the result of good faith, arm's length negotiations between

14

capable adversaries, in mediation and thereafter.

33. Second, Class Counsel conducted extensive written discovery, including interrogatories, requests for admissions and requests for documents (all of which the Trustee responded to), analyzed the applicable law and weighed the likelihood of success during the course of the litigation and settlement negotiations, and prepared for and attended a mediation.

34. Third, counsel for all Parties, and Class Counsel in particular, has the experience and the skill to both vigorously litigate WARN Act claims and to determine when and to what extent settlement is appropriate. Class Counsel has collectively been appointed as class counsel in over one hundred WARN Act cases.

35. In light of the foregoing, the Bankruptcy Court should preliminarily approve the Settlement Agreement.

**D.    The Bankruptcy Court Should Approve the Form and Manner of the Proposed Notice of the WARN Settlement.**

36. Once a settlement is preliminarily approved, notice of the proposed settlement and of the fairness hearing is provided to class members. Federal Rule of Civil Procedure 23(e) requires that all members of the class be notified of the terms of any proposed settlement. Civil Rule 23(e) requirements are "designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers and pleadings filed in the litigation." *In re Prudential*, 148 F.3d at 326-27.

37. The proposed Class Notice, which is attached to the Settlement Agreement as Exhibit C, will be served by Class Counsel upon each Class Member. Class Counsel proposes that within five business days following entry of the order preliminarily approving the Settlement Agreement, Class Counsel will serve the Class Notice substantially in the form attached hereto, upon each Class Member at the last known addresses of each Class Member according to the

15

relevant books and records or as updated by the Class Member or Class Counsel. *Cf. Prudential*, 148 F.3d at 327 (holding that mailings to last known addresses of class members and publication in national newspapers sufficient to provide notice to large, multi-state class).

38. The Class Notice describes the history of the litigation, outlines the terms of the Settlement Agreement, including the attorneys' fees and costs proposed to be paid to Class Counsel, describes how each Class Member may obtain a copy of the Settlement Agreement and provides each Class Member with a personalized projection of the Pre-tax dollar amount they would receive under the Settlement. The Class Notice also states the date, time, location and purpose of the Fairness Hearing, informs Class Members of their right to appear at the Fairness Hearing, and describes the procedure for objecting to the Settlement Agreement. Accordingly, the form and manner of the Class Notice is sufficient and should be approved.

E. **The Bankruptcy Court Should Finally Approve the Settlement at the Fairness Hearing.**

39. The Parties request the Bankruptcy Court to hold a Fairness Hearing within sixty days of entry of the preliminary approval order, such that Class Members will have at least thirty five days from the date of mailing of the class notices to object, if they so choose. At the Fairness Hearing, the Bankruptcy Court should finally approve the Settlement Agreement.

40. Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Final approval of a settlement pursuant to Rule 23(e) turns on whether the settlement is "fair, reasonable and adequate." FED. R. CIV. P. 23(e)(2); *Bezdek v. Vibram USA, Inc*., 809 F.3d 78, 82 (1st Cir. 2015). The First Circuit has held that "the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the

16

consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Id.*, quoting *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund,* 582 F.3d 30, 44 (1st Cir. 2009).  "If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *Bezdek,* 809 F.3d at 82, quoting *In re Pharm. Indus. Average Wholesale Price Litig.,* 588 F.3d 24, 32-33 (1st Cir. 2009).

    41.    The following factors strongly support approval of the Settlement Agreement.

        a.    The Settlement Agreement was reached after Class Counsel conducted extensive written discovery, analyzed the applicable law and weighed the likelihood of success.  Further, the parties had expressed their respective views of the case through mediation statements as well as through discussions and negotiations at the mediation.

        b.    As discussed, continued litigation of the WARN Action will be complicated, protracted and expensive.

        c.    The terms of the Settlement were negotiated at arm's length in a Court ordered mediation that was held on December 6, 2016.  The Class Representative personally attended the mediation and supports the Settlement Agreement and Class Counsel believe that the bulk of the other Class Members will have a favorable reaction to the Settlement Agreement and will not object to it.

        d.    The risk that the Class Representative and the Class would be unable to collect on any judgment, even if successful, was present because of the limited resources in the Debtor's estate.

        e.    When considered in light of the best possible recovery and the attendant risks, the settlement falls well within the range of reasonableness.  The settlement provides for a Settlement Payment of $1,000,000 (subject to the terms of the Settlement Agreement), which, is more than seventy-five percent of Class Counsel's calculation of 60 days' wages and benefits for each Class Member.

17

42. Based on the foregoing, the Bankruptcy Court should finally approve the Settlement Agreement.

## Conclusion

WHEREFORE, the Parties respectfully request the Bankruptcy Court to enter Orders: (i) granting the Joint Motion in its entirety; (ii) approving the Settlement Agreement on a preliminary basis[5]; (iii) approving the form and manner of the Class Notice[6]; (iv) scheduling a Fairness Hearing; (v) approving the Settlement Agreement on a final basis[7]; and (vi) granting such other relief as the Bankruptcy Court deems necessary and appropriate.

DATED: January 23, 2017                **For the Trustee:**

/s/     *Gardner H. Palmer, Jr*
Gardner H. Palmer, Jr.   (#3707)
**DIORIO LAW OFFICE**
144 Westminster Street, Suite 302
Providence, RI 02903
Phone: 401-632-0911
Fax:  401-632-0751

**And**

**For the Plaintiff and the Class:**

/s/     *Mary E. Olsen*
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
**THE GARDNER FIRM, P.C.**
210 S. Washington Ave.
Mobile, AL  36602
Telephone:  (251) 433-8100
*Admitted Pro Hac Vice*

---

[5] The Parties seek entry of a preliminary approval order from the Bankruptcy Court substantially in the form attached to the Settlement Agreement as Exhibit A, (the "Preliminary Settlement Order").
[6] The Parties seek approval from the Bankruptcy Court of the Class Notice, substantially in the form annexed to the Settlement Agreement as Exhibit C (the "Class Notice").
[7] The Parties seek entry of a final order from the Bankruptcy Court substantially in the form attached to the Settlement Agreement as Exhibit B (the "Final Settlement Order").

Stuart J. Miller (SJM 4276)
**LANKENAU & MILLER, LLP**
132 Nassau Street, Suite 1100
New York, New York 10038
Telephone: (212) 581-5005
*Admitted Pro Hac Vice*

*/s/ Evan Shanley*
Marc Gursky, Esq. (#2818)
Evan Shanley, Esq. (#8922)
GURSKY | WIENS
420 Scrabbletown Rd., Ste. C
North Kingstown, R.I. 02852
Tel. (401) 294-4700
Fax. (401) 294-4702
mgursky@rilaborlaw.com
eshanley@rilaborlaw.com