**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```
| | | |
|---|---|---|
| In re: MICROFIBRES, INC. | : | |
| | | Bk. No. 16-10154 |
| CEDRIC WILLIAMS | : | Chapter 7 |
| on behalf of himself and all others similarly situated, | : | |
| Plaintiff, | : | A.P. No.16-01002 |
| v. | : | |
| MICROFIBRES, INC., | | |
| | : | |
| Debtor | | |

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**SETTLEMENT AND RELEASE AGREEMENT**

This Settlement and Release Agreement, dated as of January 23, 2017 ("Settlement Agreement" or "Settlement"), is entered into by and among (i) Plaintiff Cedric Williams ("Plaintiff" or "Class Representative"), on behalf of himself and on behalf of the Class he represents (the "Class Members"), and (ii) Joseph M. DiOrio, the Chapter 7 trustee (the "Trustee") of Microfibres, Inc. ("Microfibres" or the "Debtor").  The Plaintiff and Trustee are collectively referred to herein as the "Parties," or, as to each, a "Party."

**RECITALS**

WHEREAS, on January 29, 2016 (the "Petition Date"), the Debtor filed with the United States Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court") a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, commencing its bankruptcy case ("Bankruptcy Case");

WHEREAS, prior to the Petition Date, Debtor operated facilities located at 1 Moshassuck Street, Pawtucket, RI 02860 (the "RI Facility") and at 3821 Kimwell Drive, Winston-Salem NC 27114 (the "NC Facility") (collectively the "Facilities");

WHEREAS, prior to the Petition Date, the Debtor collectively employed more than 100 employees, including the Class Members, in its various business operations;

WHEREAS, a plant closing occurred at each of the Facilities on or about January 28, 2016 which resulted in employment losses for approximately 176 Class Members;

WHEREAS, on February 2, 2016, and as amended on February 9, 2016, Plaintiff initiated the above-referenced action (the "WARN Action") by filing a *Class Action Adversary Proceeding Complaint (*"Complaint") against Debtor.  Therein, Plaintiff alleges that Debtor is an "employer" as defined by the WARN Act; and that the Debtor effected a plant closing, as defined in the WARN Act, at its Facilities. The Complaint further alleges that Plaintiff and the other similarly situated former employees terminated on or about January 28, 2016, worked at or reported to the Facilities, and that these former employees did not receive from Debtor 60 days' advance written notice of their termination, as required by the WARN Act.  In the Complaint, Plaintiff seeks an allowed administrative priority claim pursuant to 11 U.S.C. § 503(b)(1)(A)(ii) against Debtor in favor of himself and the Class members equal to the sum of: (a) unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for a period of 60 days, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. §2104(a)(1)(A) and which are attributable to the post-petition portion of the Plaintiff's and Class's WARN Act claims, or alternatively, an allowed priority claim, pursuant to 11

2

U.S.C. § 507(a)(4) and (5), for the first $12,745 of Plaintiff and the class WARN Act claims with any remainder as general unsecured claims;

WHEREAS, on May 6, 2016, the Trustee filed an answer to the Complaint, in which the Trustee admitted that "on or about January 28, 2016, the Debtor terminated the Plaintiffs' employment as part of a plant closing. . ." and that "the Debtor ceased all operations and terminated its employees on January 28, 2016." The Trustee also admitted that, at all relevant times, the Debtor was an "employer," as that term is defined in the WARN Act. The Trustee asserted, among other defenses, the "faltering company" and "unforeseeable business circumstances" exceptions to the WARN Act;

WHEREAS, a Scheduling Order was entered on May 16, 2016;

WHEREAS, on May 25, 2016, Plaintiff filed a Motion for Class Certification. The Motion for Class Certification was ultimately granted on August 25, 2016. The Class Notice, as approved by the Court was mailed on September 14, 2016. The opt-out deadline was November 13, 2016. Only one person (Erasmo Perez Noguez) chose to exclude himself from the Class;

WHEREAS, on May 25, 2016, Plaintiff served the Trustee with Interrogatories, Requests for Production and Requests for Admissions. The Trustee responded to Plaintiff's written discovery on July 25, 2016;

WHEREAS, the Parties agreed to mediate this matter and jointly filed a motion for entry into mediation on October 21, 2016, and requested the mediation to be held within sixty days and that the parties' compliance with the established discovery deadlines be suspended during the pendency of the mediation, and that such deadlines be modified in the event the mediation is unsuccessful;

WHEREAS, on October 24, 2016, the Court granted the Parties' request and referred the matter for mediation. The mediation was held on December 6, 2016;

WHEREAS, the Parties agree that the WARN Action presents significant and complex legal and factual issues regarding the application of the WARN Act. The Trustee denies liability and asserts numerous defenses to the WARN Action, including but not limited to that Debtor's conduct falls within one of the specific exceptions to the WARN Act. In an attempt to avoid extensive and costly litigation, and the risks attendant thereto, Plaintiff and the Trustee reached a settlement at the mediation, which, to the best of the Parties' information and belief, encompasses 176 Class Members, as described herein, and the Settlement is memorialized herein; and

NOW, THEREFORE, as material consideration and inducements to the execution of this Settlement Agreement, and in consideration of the mutual promises and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and intended to be binding, the Parties hereby agree, subject to Bankruptcy Court approval as described below, as follows:

1. **Settlement Filings.** On or before January 23, 2017, the Parties shall file a joint motion in the WARN Action, in accordance with Rule 23 of the Federal Rules of Civil Procedure and Rules 7023 and 9019 of the Federal Rules of Bankruptcy Procedure, for approval of the Settlement through a bifurcated hearing process (the "Settlement Motion"). The Settlement Motion shall request an initial hearing (the "Initial Hearing") at which time the Parties shall seek entry of an order from the Bankruptcy Court substantially in the form attached hereto as Exhibit A, (the "Preliminary Settlement Order") that (i) preliminarily approves the Settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure, made applicable by Rule 7023 of the Federal Rules of Bankruptcy Procedure, (ii) approves the Settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure; and (iii) approves the form and manner of notice to the Class Members concerning the Settlement, including, but not limited to, their right to object to the Settlement in person or by counsel (the "Class Notice"). The

4

Parties shall also request a date for a fairness hearing (the "<u>Fairness Hearing</u>"). The Parties agree that the Fairness Hearing shall be set at the convenience of the Bankruptcy Court, but in no event sooner than sixty days following entry of the Preliminary Settlement Order. At the Fairness Hearing, the Bankruptcy Court will consider final approval of the Settlement, and the Parties shall seek entry of an order from the Bankruptcy Court substantially in the form attached hereto as Exhibit B (the "<u>Final Settlement Order</u>"). This Settlement Agreement is subject to, and conditioned upon, issuance of the Final Settlement Order by the Bankruptcy Court approving this Settlement under Rule 23 of the Federal Rules of Civil Procedure made applicable herein pursuant to Fed. R. Bankr. P. 7023 and Rule 9019 of the Federal Rules of Bankruptcy Procedure, after notice to the Class Members.

2. **Effective Date.** This Settlement Agreement shall become effective upon the date on which the Final Settlement Order becomes a "Final Order" (the "Effective Date"). The Final Settlement Order shall become a Final Order when the time for taking an appeal has expired or, in the event an appeal has been taken, the day the Final Settlement Order has been affirmed with no further right of appeal. In the event that the Effective Date does not occur: (i) this Settlement Agreement and the recitals contained herein shall be void and without force or effect, and neither this Settlement Agreement, nor any of the statements contained herein, shall be admissible in any proceeding involving the Parties; (ii) neither the motions to obtain an order approving this Settlement Agreement nor any of the pleadings filed in support of the motions shall be admissible in any proceeding involving the Parties; and (iii) none of the provisions hereof shall prejudice or impair any rights, remedies or defenses of any of the Parties.

3. **The Settlement Amount.** The Settlement Amount shall be equal to one million dollars ($1,000,000) ("<u>Settlement Amount</u>"), payable by the Trustee via wire transfer(s) to The Gardner Firm, PC or their designee (according to instructions to be supplied by Class Counsel) within

5

five business days of the Effective Date, or as soon thereafter as the Trustee has the available funds to satisfy the Settlement Amount, in accordance with the following: a) five hundred thousand dollars ($500,000) to be paid from the first $500,000 in funds received into the Debtor's estate on or after December 6, 2016 and b) five hundred thousand dollars ($500,000) to be paid at the rate of fifty percent (50%) from the next one million dollars ($1,000,000) in funds received into the Debtor's estate (beyond the five hundred thousand dollars referenced in 3(a)).  Within five business days following final approval of the Settlement Agreement by the Bankruptcy Court and every thirty days thereafter, the Trustee will provide a) monthly written reports via electronic transmission to Class Counsel disclosing estate recoveries since December 6, 2016, along with b) wire transfers to The Gardner Firm, P.C. or their designee until the Settlement Amount of one million dollars is paid in full.

    **4.**    **Responsibilities of Class Counsel and the Settlement Administrator.** Class counsel shall retain a third party settlement administrator (the "Settlement Administrator") to distribute the Settlement Amount as set forth herein and further manage all applicable tax withholdings and reporting.  The Settlement Administrator shall be responsible for issuing payment to Class Counsel and Class Members and handling all other aspects of the administration of the Settlement, including, but not limited to: a) the formation of a qualified settlement fund (the "Qualified Settlement Fund") as authorized by Treasury Regulation 1.486B-1(c) to accept, distribute, and otherwise administer the Settlement; b) the determination, subject to Class Counsel's and the Trustee's review and approval, of the payroll tax and withholding amounts for each of the individual payments to each Class Member; c) the preparation and mailing of settlement checks to each Class Member; d) the withholding, transmittal, and reporting, as appropriate, of all payroll taxes, and preparing and mailing of all W-2 Forms (for wage claim payments) and 1099 Forms (for non-wage claim payments-as necessary), and e) the processing of returned notices or settlement checks as undeliverable, including re-mailing to

6

forwarding addresses and tracing of current addresses. The Parties have agreed to split the fees and costs of the Settlement Administrator, which is not expected to exceed $10,000, such that half of that expense shall be paid from the Settlement Amount as part of Class Counsel's Expenses (defined below) and the other half to be paid by the Trustee, in addition to the Settlement Amount. The Trustee shall include and pay the estate's half of the fees and costs of the Settlement Administrator in addition to, and at the same time as, his initial payment on the Settlement Amount. Once payments on the Settlement Amount have been received by the Settlement Administrator, such amounts shall be distributed by the Settlement Administrator in one or more distributions, at the request of Class Counsel, as follows: (a) a one-time payment of $7,500 to Plaintiff Cedric Williams and a one-time payment of $2,500 to contributing non-plaintiff Dawn Phillips for their services rendered in this action (the "Service Payments") and (b) the balance, minus one third attorney fees, plus expenses of litigation, shall be the gross amounts (the "Pre-tax Amounts") divided among the Class Members, as shown on Schedule 1 hereto.[1] The Pre-tax Amounts have been calculated by Class Counsel and were derived from Debtor's books and records. Within five (5) business days of the entry of the Bankruptcy Court's final order approving the Settlement, Class Counsel shall provide the Settlement Administrator with a list of the names, addresses, and distribution amount for all payments due under this Settlement Agreement, including the Pre-tax Amount due to each Class Member. The Settlement Administrator shall then determine the amount due to each Class Member, less all applicable taxes and withholdings. Payments from the Settlement Fund to Class Members shall be made net of all applicable employment taxes to be withheld from such payments as determined to be due by the Settlement Administrator, including, without limitation, FICA/Medicare tax and federal, state and

---

[1] The parties have determined that James McCulloch and Alice S. Kraseiko were mistakenly included in the Class and have thus excluded them from Schedule 1. The Parties have agreed to send a Notice of Exclusion to Mr. McCulloch and to the last known address of Ms. Kraseiko (who was deceased before the shutdown), the form of which is attached hereto as Exhibit D.

local income tax withholding. Any and all applicable amounts withheld from the Class Members, including, without limitation, the employee and employer portion of FICA/Medicare tax and federal, state and local income tax withholding, and any and all applicable employer tax contributions, including, without limitation, any federal and state unemployment tax due, shall be reported to the Internal Revenue Service ("IRS") or other applicable taxing authorities when payment becomes due and owing and reported under the payee's name and social security number on a W-2 Form and any applicable state or local tax form. All applicable employer tax contributions, including, without limitation, the Debtor's share of FICA/Medicare tax and any federal and state unemployment tax due, shall be paid out of the Settlement Fund. The Settlement Administrator shall be responsible for transmitting said amounts to the appropriate taxing authorities. Verification of payment of such taxes to the appropriate taxing authorities shall be provided by the Settlement Administrator to Class Counsel and counsel for the Trustee. Payments of Class Counsel's Fees and Class Counsel's Expenses shall be made to Class Counsel by the Settlement Administrator without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which such payee shall provide for this purpose, on a 1099 Form. The Service Payments shall be made by the Settlement Administrator without withholding and reported to the IRS and the payee under the payee's name and social security number on a 1099 Form. The payment of administration fees and costs to the Settlement Administrator shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on a 1099 Form. The Settlement Administrator shall prepare, file and provide copies (within fifteen (15) days of filing) of all of the foregoing to Class Counsel and the Trustee's counsel, together with proof of transmittal of all necessary taxes, and shall prepare and file all returns, reports, information references, other reporting and other documents with, and remit all necessary taxes to, the taxing authorities in connection with the payments to be made

8

under this Settlement so as to ensure compliance with all federal and state tax laws and related reporting requirements. For the avoidance of doubt, the Trustee and Debtor shall not be responsible for any payroll taxes or any federal, state or local income tax imposed on employees (which taxes shall be properly withheld and remitted to the applicable taxing authorities as required herein); any employer tax payments, including, without limitation, the Debtors' share of FICA/Medicare tax and any federal and state unemployment tax; any taxes imposed with respect to the payment of attorneys' fees to Class Counsel under this Settlement Agreement; any taxes imposed with respect to the payment of the Service Payments; any taxes imposed with respect to the payment of administration fees to the Settlement Administrator; or any and all taxes imposed on the income and earnings of the Qualified Settlement Fund. Class Counsel shall be responsible for the production and mailing of all notices required to be provided to the Class Members (the "Class Notice"), the cost of which shall be paid from the Settlement Amount. The address of Class Counsel will be used as the return address for the Class Notices and Class Counsel will respond to all inquiries of the Class arising from or related to this Settlement.

5. **Class Counsel's Fees and Class Counsel's Expenses.** After deduction of the Service Payments (defined above) from the Settlement Amount, Class Counsel is entitled to attorneys' fees ("Class Counsel's Fees") in the amount of one third of the remaining Settlement Amount, plus litigation expenses (including costs associated with the production and mailing of the Class Notice) ("Class Counsel's Expenses"), which shall be payable solely from the Settlement Amount. Class Counsel's Fees and Class Counsel's Expenses shall be payment in full for Class Counsel's work and expenses in connection with this matter.

6. **Residual Funds.**

9

(a) <u>Settlement Checks</u>.  Any Class distributions pursuant to this Settlement Agreement which are not deposited, endorsed, or negotiated within one hundred eighty (180) days of their date of issuance shall be deemed residual funds (the "<u>Residual Funds</u>") on the 181st day following the Settlement distribution and treated as described below.

(b) <u>Reversion of Residual Funds</u>.  Residual Funds will be (i) first, used to make Settlement distributions to additional Class Members, if any, that may be identified after the Settlement Administrator has made the distribution of the Settlement Amount and who fall within the Class definition herein but who did not appear on <u>Schedule 1</u> ("<u>Additional Class Members</u>"); (ii) second, distributed to Class Members in a supplemental distribution, so long as Class Counsel determine that such distribution is feasible; and (iii) if any Residual Funds remain after Settlement Payment disbursements to Additional Class Members or as a supplemental distribution, then last, shall revert back to Debtor's estate.  No portion of the Residual Funds shall revert to or be retained by Class Counsel.

**10.     The Class Mailings.**  As noted above, Class Counsel shall bear the responsibility of the preparation of the Class Notices.  All notices and disbursements to the Class Members will be made by first class mail to their last known addresses as set forth on Schedule 1, unless otherwise instructed by the proposed Settlement Class member. Class Counsel's address will be used as the return address for all notices to the Class Members so that any returned Class notices will be returned to Class Counsel. Class Counsel shall mail the Class Notice to the Class Members no later than five (5) business days after the entry of the Preliminary Settlement Order by the Bankruptcy Court.  The cost related to the Class Notice and other Class mailings shall be paid from the Settlement Amount.  The Class Notice shall be in substantially the form annexed hereto as Exhibit C or such substantially similar form as may be approved by the Bankruptcy Court.  If a Class Notice is returned to Class Counsel as

10

undeliverable, Class Counsel will attempt to locate the Settlement Class member whose address has changed using a national address database to which Class Counsel subscribes.

    (a)    <u>Contents of the Class Notice</u>.  The Class Notice shall contain the following information, which shall be individualized for each Class Member:

        (i)    That the Settlement shall become effective only if the Settlement Agreement is finally approved by the Bankruptcy Court under Rule 23 of the Federal Rules of Civil Procedure and Rule 9019 of the Federal Rules of Bankruptcy Procedure;

        (ii)    That, if so approved, the Settlement shall be effective as to all Class Members;

        (iii)    The projected dollar amount each Class Member would receive under this Settlement;

        (iv)    That each Class Member has the right to object to this Settlement either in person or through counsel and be heard at the Fairness Hearing; and

        (v)    That all Released Claims (as that term is defined below) of a Class Member (other than the right to be paid under the terms of this Settlement if approved by the Court) shall be waived, and that no person, including the Class Member, shall be entitled to any further distribution thereon.

    (b)    <u>Representation as to Schedule 1</u>.  The Trustee represents that, to the best of his knowledge, information and belief, and based solely upon the information contained in Debtor's books and records, all employees falling within the Class definition above are listed on Schedule 1, hereto.  The Trustee makes no representations regarding the accuracy of Debtor's books and records.

    **11.**    **<u>Objection to Settlement Procedures</u>**.  A Class Member may object to this Settlement by sending timely written notice of such objection (a "<u>Notice of Objection</u>") to Class Counsel and counsel to the Trustee at the addresses set forth in Section 18(c) below and filing such Notice of

11

Objection with the Bankruptcy Court. Any such objections shall state (i) the objector's full name, mailing address, and telephone number, (ii) if applicable, the full name, mailing address, and telephone number of the objector's attorney, and (iii) all reasons for objecting to the Settlement and any supporting papers, materials, or briefs. Any such objections must be sent/filed such that they are received by the Parties and the Bankruptcy Court by the objection deadline established by the Bankruptcy Court and/or applicable law or rules of procedure, and served in accordance with the procedures set forth in the Preliminary Settlement Order and the Notice.

12. **The Waiver and Release of any Released Claims by All Class Members if the Settlement Becomes Effective.**

(a) <u>Released Claims of Class Members</u>. Except for the rights arising out of, provided for, or reserved in this Settlement Agreement, upon the Effective Date, Plaintiff and the Class Members, for and on behalf of themselves, and their respective predecessors, successors, assigns, heirs, personal representatives and estates (collectively, the "<u>Releasing Parties</u>"), do hereby fully and forever release and discharge the Trustee, the estate of Debtor, including but not limited to Debtor's current and former holding companies, parents, subsidiaries, affiliates, entities, divisions, lenders, shareholders, owners, investors, officers, directors, members, partners and/or limited partners, principals, assigns, employees, agents, representatives, insurers, accountants, consultants, and attorneys, and the predecessors and successors of each of the foregoing, in any capacity whatsoever (collectively, the "<u>Released Parties</u>") from any and all claims of any kind, including but not limited to any and all civil, regulatory, and/or administrative claims, actions, suits, demands, rights, causes of action, liabilities, liens, judgments, damages, or proceedings (including for damages, attorneys' fees, penalties, costs, and expenses of every kind and however denominated) at law, in equity, and otherwise, whether known or unknown, anticipated, suspected, or disclosed, which the Releasing Parties have, may have, have asserted, or could assert in the future against the Released Parties of any

type whatsoever which are based upon the WARN Act, or any other federal, state, or local laws or regulations of similar effect (the "Released Claims").  The Released Parties expressly reserve the right to object to, offset, or oppose any and all Released Claims, and to pursue claims against third parties other than the Class Members with respect to the Released Claims.  Upon the Effective Date, the Class Members agree that any Released Claims that have been filed by the Class Representative or the Class Members in the Bankruptcy Case are disallowed in their entirety and shall be deemed expunged from the claims register.  In addition, each Releasing Party shall be deemed as of the Effective Date and the payment of the Settlement Amount to have released Plaintiff from any and all claims whether liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown that he or she may have against Plaintiff, any successors or assignees to his legal interests, or any of his present or former agents, attorneys, or consultants arising out of any Released Claim or the terms of this Settlement.

(b) **Dismissal of WARN Action**.  Subject to the last sentence of this Section 13(b), the Parties shall execute a dismissal with prejudice of the WARN Action in a form agreeable to the Parties (the "Dismissal").  Class Counsel shall immediately file the Dismissal with the Bankruptcy Court following the Effective Date.  Dismissal of the WARN Action shall not abate or limit the effectiveness of either this Settlement Agreement or the Final Settlement Order.

**13.  Protection of Class Members' Confidential Information.**  In order to protect the privacy of the Class Members, it is presently contemplated that the Parties shall seek to file Schedule 1 with the Bankruptcy Court under seal.  However, Class Counsel may disclose the information relating to a given Class Member to that Class Member or use the information to locate a Class Member as contemplated herein.

**14. No Litigation.** Except as may be necessary to enforce the terms of this Settlement, the Trustee, Debtor, Plaintiff, Class Counsel, the Releasing Parties, and any other person who accepts payment hereunder agrees that she or he shall not commence or proceed with any action, claim, suit, proceeding, or litigation on the Released Claims, or take any action inconsistent with the terms of the Settlement.

**15. No Admission of Liability.** This Settlement and this Settlement Agreement are intended to settle and dispose of the Released Claims. Nothing herein shall be construed as an admission by any Party of any facts or liability of any kind.

**16. Representations and Warranties.** Each Party represents and warrants that upon entry of an Order finally approving this Settlement Agreement, it will have the legal right and authority to enter into this Settlement and the transactions contemplated hereby.

**17. Further Assurances.** The Parties shall cooperate fully and shall execute and deliver any and all supplemental papers, documents, instruments and other assurances and shall do any and all acts that may be reasonably necessary or appropriate to give full force and effect to the terms and intent of this Settlement.

**18. Miscellaneous.**

(a) Continuing Jurisdiction of the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction over this Settlement Agreement and any dispute or controversy arising from or related to the interpretation or enforcement of this Settlement Agreement.

(b) Governing Law/Jurisdiction. Except where superseded by applicable federal law, this Settlement Agreement shall be governed by the laws of the State of Rhode Island without regard for the choice of law provisions thereof.

(c)     Notices. Any notice or other communication required or permitted by this Settlement Agreement between Class Counsel, the Trustee or from any Class Member to the Class Counsel, the Trustee and/or the Bankruptcy Court shall be (i) in writing, (ii) delivered personally, by courier service or by certified or registered mail, first-class postage prepaid and return receipt requested, (iii) deemed to have been received on the date of delivery, and (iv) addressed as follows (or to such other address as the Party entitled to notice shall hereafter designate by a written notice filed with the Bankruptcy Court):

**If to the Trustee, to:**

DiOrio Law Office
144 Westminster Street, Suite 302
Providence, RI 02903
Attention:     Gardner H. Palmer, Jr., Esquire

**If to Class Members or Class Counsel, to:**

The Gardner Firm, P.C.
210 S. Washington Avenue
Mobile, Alabama 36602
Attention:     Mary E. Olsen, Esq.

AND

Lankenau & Miller LLP
132 Nassau Street, Suite 1100
New York, New York 10038
Attention:     Stuart J. Miller, Esq.

(d)     Severability. Should any provision(s) of this Settlement Agreement, other than the provisions of Section 12, be declared or be determined by any court of competent jurisdiction to be illegal, invalid, and/or unenforceable, then the legality, validity, and/or enforceability of the remaining parts, terms, and/or provisions shall not be affected thereby, and said illegal, unenforceable, and/or invalid part, term, and/or provision shall be deemed not to be a part of this Settlement Agreement.

15

(e)     <u>Amendments</u>.  This Settlement may not be modified, amended or supplemented except by a written agreement that the Parties have signed with any required approval of the Bankruptcy Court.

(f)     <u>Integration</u>.  This Settlement contains the entire agreement among the Parties with respect to the matters covered by this Settlement and this Settlement Agreement.  This Settlement Agreement shall supersede any previous understanding, representation, promise, or agreement by or between the Parties with respect to the matters covered by this Settlement and this Settlement Agreement.  No promise, understanding, representation, or agreement made by any Party or agent, director, officer, employee, or attorney of any Party that is not expressly contained in this Settlement Agreement shall be binding or valid.

(g)     <u>Interpretation</u>.  This Settlement Agreement is the product of negotiations between the Parties.  This Settlement Agreement shall be deemed to have been mutually prepared by the Parties and shall not be construed against any one of them by reason of authorship.  No Party to this Settlement Agreement shall be considered to be the drafter of any of its provisions for the purpose of any rule of construction requiring that ambiguities are to be resolved against the drafting party, and any such rule of construction shall not apply in the interpretation of this Settlement Agreement.

(h)     <u>Headings</u>.  The headings in this Settlement Agreement are for convenience only and are not part of this Settlement Agreement and do not in any way define, limit, extend, describe, or amplify the terms, provisions, or scope of this Settlement Agreement and shall have no effect on its interpretation.  The use of the singular and the plural and the use of the masculine gender and the feminine gender shall be interpreted in the appropriate context.

(i)     <u>Signatures</u>.  Facsimile or other electronic copies of signatures on this Settlement Agreement are acceptable, and a facsimile or other electronic copy of a signature on this

Settlement Agreement shall be deemed to be an original.  Each party faxing or making other electronic copy of a signature on this Settlement Agreement shall retain the original copy bearing its signature until the Bankruptcy Court issues the Final Settlement Order.

      (j)    <u>Counterparts</u>.  This Settlement Agreement may be executed in one or more counterparts, each of which together or separately shall constitute an original and which, when taken together, shall be considered one and the same binding agreement.

      (k)    <u>Cooperation</u>.  The Parties agree to cooperate with one another to effectuate an efficient and equitable implementation of this Settlement Agreement.

      (l)    <u>Binding Nature of Settlement</u>.  Upon approval by the Bankruptcy Court, this Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors, transferees, assigns, heirs and estates.

      (m)    <u>Effect of Waiver of Breach</u>.  The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any prior or subsequent breach of this Settlement Agreement.

      (n)    <u>Receipt of Advice of Counsel</u>.  The Parties acknowledge, agree, and specifically warrant to each other that they have fully read this Settlement Agreement and received legal advice with respect to the advisability of entering into this Settlement Agreement and with respect to the legal effect of this Settlement Agreement.  The Parties further acknowledge, agree, and specifically warrant that they fully understand the legal effect of this Settlement Agreement.

      (o)    <u>Opportunity to Investigate</u>.  The Parties acknowledge, agree, and specifically warrant to each other that they and their counsel have had adequate opportunity to make whatever investigation and inquiries deemed necessary or desirable in connection with the subject matter of this Settlement Agreement and the advisability of entering into this Settlement Agreement.

(p)     Good Faith Settlement.  The Parties acknowledge, agree, and specifically warrant to each other that they are entering into this Settlement Agreement freely, without duress, in good faith, and at arms' length.

(q)     Preservation of Privilege.  Nothing contained in this Settlement Agreement or any order of the Bankruptcy Court and no act required to be performed pursuant to this Settlement Agreement or any order of the Bankruptcy Court is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection, or common interest/joint defense privilege.

(r)     Nonadmissibility.  The negotiations resulting in this Settlement Agreement have been undertaken by the Parties and their respective counsel in good faith and for settlement purposes only.  No evidence of negotiations or discussions underlying this Settlement Agreement shall be offered or received in evidence for any purpose in any action or proceeding.

IN WITNESS WHEREOF, the Parties have executed and delivered this Settlement as of the date first written above.

**AGREED TO FOR TRUSTEE BY**:

/s/     *Gardner H. Palmer, Jr.*
Gardner H. Palmer, Jr.   (#3707)
**DIORIO LAW OFFICE**
144 Westminster Street, Suite 302
Providence, RI 02903
Phone: 401-632-0911
Fax:  401-632-0751

**AGREED TO BY CLASS COUNSEL:**

/s/     *Mary E. Olsen*
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
**THE GARDNER FIRM, P.C.**

        210 S. Washington Ave.
        Mobile, AL  36602
        Telephone:  (251) 433-8100

        Stuart J. Miller (SJM 4276)
        **LANKENAU & MILLER, LLP**
        132 Nassau Street, Suite 1100
        New York, New York 10038
        Telephone:  (212) 581-5005